**AKIN GUMP STRAUSS HAUER & FELD LLP**
REX S. HEINKE (SBN 066163)
rheinke@akingump.com
MICHAEL C. SMALL (SBN 222768)
msmall@akingump.com
2029 Century Park East, Suite 2400
Los Angeles, CA 90067-3010
Telephone:  310.229.1000
Facsimile:   310.229.1001

STEPHEN A. MANSFIELD (SBN 129666)
smansfield@akingump.com
580 California Street, Suite 1500
San Francisco, CA 94104-1036
Telephone: 415.765.9500
Facsimile:   415.765.9501

MICHAEL SIMONS (*Motion for Admission Pro Hac Vice Pending*)
msimons@akingump.com
600 Congress Avenue, Suite 1350
Austin, TX  78701
Telephone:  512.499.6200
Facsimile:   512.499.6290

Attorneys for Plaintiffs HomeAway, Inc., HomeAway.com, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HOMEAWAY, INC., HOMEAWAY.COM, INC., Delaware corporations,<br><br>            Plaintiffs,<br><br>     v.<br><br>CITY AND COUNTY OF SAN FRANCISCO, a municipal corporation, JOHN RAHAIM in his official capacity, DOES 1-10,<br><br>            Defendants. | Case No. _____<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF FOR CONSTITUTIONAL VIOLATIONS** |

Plaintiffs HomeAway, Inc. and HomeAway.com, Inc. (collectively "Plaintiffs or "HomeAway"), allege the following facts in support of this action.

## NATURE OF THE ACTION

1. Plaintiffs seek a declaratory judgment that Defendant City and County of San Francisco's ("San Francisco" or the "City") Ordinance No. 140381 (the "Ordinance") violates the Commerce Clause of the United States Constitution, art. I, § 8, cl. 3. Plaintiffs also seek an injunction preliminarily and permanently enjoining Defendants from enforcing the Ordinance.

2. The Ordinance violates the Commerce Clause because it discriminates against interstate commerce through differential treatment of San Francisco-based and non-San Francisco-based interests that benefits the former and burdens the latter. This unconstitutional discrimination takes two forms. First, by its express terms, the Ordinance allows only permanent San Francisco residents to rent out on a short-term basis (which the Ordinance defines as thirty days or less) residential property they own or lease in San Francisco. Non-permanent residents of San Francisco who own or lease property in San Francisco are barred on the face of the Ordinance from renting out their property on a short-term basis. Second, the Ordinance requires entities that provide "Hosting Platforms," on which owners and lessees of property may advertise their property for short-term rentals, to conform their business operations in San Francisco to one particular model, and no other, under pain of monetary penalties. This anti-competitive measure forces those seeking to rent property to turn over control of selecting short-term tenants to entities that operate the type of Hosting Platform model sanctioned by the Ordinance and to pay whatever fees those entities might charge today or in the future. While facially neutral, the Ordinance's Hosting Platform rules have the purpose and effect of discriminating against non-San Francisco-based interests.

3. The Ordinance also violates the Commerce Clause because both the residency restriction and Hosting Platform rules impose substantial burdens on interstate commerce in excess of any asserted local benefit.

4. HomeAway is based in Austin, Texas. HomeAway, Inc., through HomeAway.com, Inc. and its other subsidiaries, operates the largest national online marketplace in the vacation rental industry. HomeAway allows an owner or lessee of an individual residential property, or that owner or lessee's designated and legal agent (each referred to herein as a "Listing Owner"), to advertise that property for rental on HomeAway's websites. HomeAway websites have approximately 1,000,000 listings worldwide. Persons seeking to rent residential properties ("Travelers") can access HomeAway's websites to look for a desired rental property. When a Traveler is interested in renting a property, the Traveler contacts that Listing Owner directly and makes an agreement directly with the Listing Owner to arrange the rental. Listing Owners control the transaction and choose to whom they will rent, when they wish to rent, and how and when they wish to be paid before the Traveler occupies the property. The majority of Listing Owners on HomeAway websites require full payment in advance of the Traveler taking occupancy.

5. The market for online travel and short-term rental services is highly competitive. Airbnb, Inc. ("Airbnb"), a San Francisco-based company, is a more recent entrant into this market and uses an "Agency" business model. An Agency business model allows Listing Owners to post their properties on the Agency's website, but requires the Agency to be the merchant of record for the payment of the rental. The Agency also controls all communications between the Traveler and the Listing Owner and makes the Listing Owner come to an agreement with the Traveler only through the Agency, and sets policies to be followed by the Listing Owner and the Traveler. Furthermore, under the Agency model, the Agent, and not the Listing Owner, collects and holds the rental payment, deducts the Agency fees, and remits the net proceeds to

the Listing Owner only after the Traveler has taken occupancy of the property. In its use of the Agency model, Airbnb also charges the Traveler a fee.

6. Airbnb was actively involved in drafting the Ordinance and lobbied extensively for its passage. Indeed, two members of Airbnb's Board of Directors made financial contributions totaling $674,000 benefitting at least one member of the San Francisco Board of Supervisors (the member who sponsored the Ordinance) through contributions to a political action group that attacked his opponent in the November 2014 election.

7. The Ordinance essentially adopts the Agency business model as the sole business model available to Listing Owners in San Francisco. It makes illegal any competing business model, such as HomeAway's, that does not require the Listing Owner to act as an agent in the collection and holding of Listing Owner information, fees, and taxes and allows the Traveler to contract directly with the Listing Owner, who sets his or her own policies and leases the property to the Traveler.

8. The Ordinance's permanent residency restriction excludes from the San Francisco short-term rental market current and potential HomeAway customers who own or lease property in San Francisco but who do not reside there for 275 days per year, which is an arbitrary definition of permanent resident.

9. The Ordinance's Hosting Platform rules prevent HomeAway from doing business in San Francisco altogether, even with permanent San Francisco residents, because the Ordinance allows rentals by permanent San Francisco residents only through Hosting Platforms that use an Agency business model.

10. The asserted goal of the Ordinance is to increase the availability of affordable residential rental housing in San Francisco by limiting short-term rentals. Defendants have failed, however, to explain why the facially discriminatory permanent residency restriction, which allows some short-term rentals but impairs the rights of potential HomeAway customers who are not permanent San Francisco residents under

3
COMPLAINT

the Ordinance and who own or lease residential housing in San Francisco that they wish to rent out on a short-term basis, is necessary to achieve that purported objective. This renders the restriction unconstitutional under the Commerce Clause.

11. The asserted goal of the Ordinance's regulation of Hosting Platforms is to promote sound business practices in the short-term rental market. Defendants have failed, however, to explain why the Ordinance's rigid Hosting Platform rules, which have the purpose and effect of discriminating against non-San Francisco based interests and reflect naked economic protectionism for San Francisco-based Airbnb by effectively granting its Agency business model a local monopoly, are necessary to achieve that objective. This renders the Hosting Platform rules unconstitutional under the Commerce Clause.

12. In any event, any asserted local benefit of the Ordinance's residency restriction and Hosting Platform rules is outweighed by the substantial burdens they impose on interstate commerce and thus both the residency restriction and the Hosting Platform rules violate the Commerce Clause for this reason as well.

## JURISDICTION

13. This case presents a federal question arising under the Commerce Clause of the Constitution of the United States, art. I, § 8, cl. 3, and 42 U.S.C. § 1983. This Court therefore has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3).

14. The Ordinance harms HomeAway and its customers because Listing Owners of residential units in San Francisco who are not permanent San Francisco residents will be unable to rent their property through services that HomeAway could and would otherwise provide. Absent this discriminatory exclusion, HomeAway's San Francisco listings would include all Listing Owners who choose to exercise their property rights and rent out their homes, not just San Francisco residents.

15. HomeAway understands that the City will claim it is a "Hosting Platform" as defined in the Ordinance. Thus, if HomeAway advertises short-term rentals in San

Francisco, the City will subject it to the Ordinance's rigid rules governing Hosting Platforms. The Ordinance's Hosting Platform rules harm HomeAway because they make it impossible for HomeAway to conduct business in San Francisco. To comply with the Hosting Platform rules would require HomeAway to adopt an entirely different business model, which HomeAway believes to be unappealing to the Listing Owners with more than 1,000,000 listings on HomeAway websites who prefer to communicate and transact business directly with Travelers rather than hand-off those customers to an agent that controls the transaction, holds the customers' money, and charges them additional fees.

16. Venue is proper in this Court under 28 U.S.C. § 1391.

**PARTIES**

17. Plaintiff HomeAway, Inc. is a corporation organized and existing under the laws of the state of Delaware, with a principal place of business at 1011 W. Fifth Street, Austin, Texas. Plaintiff HomeAway.com, Inc. is a corporation organized under the laws of the State of Delaware and a wholly owned subsidiary of Plaintiff HomeAway, Inc., with its principal place of business at 1011 W. Fifth Street, Austin, Texas. HomeAway does business within the Northern District of California.

18. Defendant City and County of San Francisco ("City") is a municipal corporation.

19. Defendant John Rahaim is the Director of the City Planning Department. It is his duty, and the duty of the employees he supervises, to enforce the Ordinance. Mr. Rahaim is sued in his official capacity.

20. HomeAway is unaware of the true names or capacities, whether individual, corporate, associate, or otherwise, of Defendants sued herein as DOES 1 through 10, inclusive, and therefore sues these Defendants by such fictitious names. HomeAway will seek leave of the Court to amend this pleading to set forth the true names and capacities of said Doe Defendants when the same are ascertained. HomeAway is

informed and believes, and on that basis alleges, that each of the fictitiously named Defendants is responsible in some manner for the occurrences herein alleged, or was acting in concert with, and with the permission, approval, and authorization of, the specifically named Defendants.

## FACTUAL ALLEGATIONS

### HomeAway and Its Business

21. Founded in 2005, HomeAway, Inc. operates an online vacation rental property marketplace that enables Listing Owners to advertise properties available for short-term rental to Travelers who use HomeAway's websites to search for and find available properties that meet their desired criteria, including location, size, and price.

22. HomeAway operates the world's largest online marketplace in the vacation rental industry, comprising a number of websites, including the following: HomeAway.com, VRBO.com, VacationRentals.com, OwnersDirect.co.uk, HomeAway.de, Abritel.fr, Homelidays.com, BedandBreakfast.com, FeWo-Direkt.de (Germany), HomeAway.co.uk (UK), HomeAway.es and TopRural.com (Spain), AlugueTemporada.com.br (Brazil), HomeAway.com.au (Australia), HomeAway.se (Sweden), HomeAway.pt (Portugal), HomeAway.ca (Canada), HomeAway.mx (Mexico), HomeAway.com.co (Colombia), HomeAway.com.ar (Argentina), HomeAway.at (Austria), HomeAway.dk (Denmark), HomeAway.no (Norway), and HomeAway.it (Italy).

23. HomeAway operates four online rental websites directed principally to Listing Owners and Travelers in the United States, including HomeAway.com, VRBO.com, VacationRentals.com, and BedandBreakfast.com. The combination of Homeaway.com, VRBO.com, and VacationRentals.com alone creates one of the largest vacation rental distribution networks in the world.

24. Through HomeAway's online marketplace, Travelers can search and/or book fully furnished, privately owned residential properties, including homes,

condominiums, villas, cabins, houseboats, tee-pees, tree houses, and other unique properties, that Listing Owners rent to the public on a nightly, weekly, or monthly basis. HomeAway's online marketplace brings together millions of Travelers seeking short-term rentals online with the Listing Owners of over one million individually-controlled and managed vacation rental properties located in all 50 of the United States and 190 countries around the world.

25. Short-term rentals are increasingly popular across the United States. The expansion of HomeAway's business reflects this. From 2006 to September 30, 2014, the number of listings on HomeAway's network of websites grew from a single site with 60,000 listings to several sites with an aggregate of over 1,000,000 listings worldwide.

26. HomeAway and its online marketplace have received numerous accolades and awards, including Travel Weekly Magellan Awards Gold Winner (2013) (one of the best vacation rental services in the hospitality industry); Ernst & Young Entrepreneur of the Year (2012); Travel + Leisure Best Apps and Websites for Travelers (August 2012); Leisure and Tourism – Customer Service Department of the Year (February 2012); Deloitte Technology Fast 500 (2011) (HomeAway recognized as one of the fastest growing companies in North America); and Kiplinger's Personal Finance Best of Everything 2010 (HomeAway named best vacation rental site).

27. Travelers visit HomeAway's marketplace at no charge and are able to search and compare HomeAway's large and detailed inventory of listings to find vacation rentals meeting their requirements. HomeAway's decision not to charge fees to Travelers is a competitive advantage to HomeAway.

28. Travelers transact directly with Listing Owners to arrange their stay. Travelers who find a short-term property that meets their requirements through HomeAway's marketplace are able to contact Listing Owners directly by phone or through form-based communication tools on HomeAway's websites. Travelers pay the Listing Owners directly and are not charged a fee to use the HomeAway website.

7
COMPLAINT

Travelers may purchase guarantees, deposit insurance, and travel insurance through HomeAway, but these charges are at all times independent of the Listing Owner's charge to rent the property.

29. HomeAway derives its primary revenue from Listing Owners who advertise on its websites. There are two means by which Listing Owners compensate HomeAway. First, Listing Owners can pay for the listings by purchasing subscriptions, which are typically annual in nature, to provide detailed descriptions of their properties on HomeAway's websites and reach a broad audience of Travelers seeking vacation rentals. This is the most common form of HomeAway's compensation. Alternatively, Listing Owners may choose to pay for their listings via a HomeAway product called pay-per-booking launched in September 2013. Under this compensation mechanism, which is far less common, the Listing Owner agrees to pay up to 10% of the value of a confirmed booking for the listing. Under either approach, however, Listing Owners correspond directly with Travelers to arrange and contract for rentals and collect all rental fees (although some Listing Owners use third party payment services to collect fees).

30. HomeAway does not make agreements with Travelers to rent properties from Listing Owners or collect rental fees from Travelers for remittance to Listing Owners. HomeAway is not a party to the rental transaction. And Home Away does not receive any rental fees from Travelers.

### Pre-Ordinance Treatment of Short-Term Rentals in San Francisco

31. From 1981 until adoption of the Ordinance, San Francisco prohibited the rental of residential units "for tourist or transient use," defined to mean "use of a residential unit for occupancy for less than a 30-day term . . . ." San Francisco Administrative Code, § 41A.

32. Under this law, no Listing Owners of property in San Francisco were able to rent their property for such a short-term rental.

33. While this law existed, however, the City did not enforce it. Instead, the City tacitly accepted the growing short-term rental marketplace and accepted hotel and occupancy taxes from Listing Owners who understood that the act of renting for less than 30 days was taxable under other laws on San Francisco's books.

34. Legalizing the short-term rental of residential units in San Francisco, a popular tourist destination, will facilitate travel to San Francisco, both by Californians and non-Californians, and thereby help promote the local economy

### **Airbnb and its Role In The Adoption Of The Ordinance**

35. Airbnb, Inc. ("Airbnb") entered the market for online travel and short-term rental services after HomeAway. It describes its services as "the easiest way for people to monetize their extra space." Like HomeAway, Airbnb targets Travelers around the world, but, does so through a single Internet website -- airbnb.com.

36. The Ordinance was introduced on April 15, 2014. It was sponsored by Supervisor Chiu, a member of the San Francisco Board of Supervisors. Airbnb lobbyists met with Supervisor Chiu, as well as other members of the Board, urging the passage of a short-term rental law that became the Ordinance that is the subject of this action.

37. Public records show the many meetings between Airbnb lobbyists and Supervisor Chiu, as well as political contributions made by Airbnb board members that benefited Supervisor Chiu. They show that in the year leading up to the Ordinance's introduction, Airbnb lobbyists met with Supervisor Chiu more than thirty times.

38. In May 2014, within a month after the Ordinance was introduced, Reid Hoffman, a member of the Airbnb Board of Directors, contributed $200,000 to a political action group that was dedicated to supporting Supervisor Chiu, who is running for the California Assembly. That same month, Gayle Conway, the wife of Airbnb Board member Ron Conway, contributed $49,000 to the same political action group.

39. In September 2014, a lobbyist for Airbnb met with Supervisor Chiu four times. That same month, Mr. Hoffman contributed another $300,000 to Supervisor Chiu's political action group, and Mr. Conway contributed $49,900.

40. On October 7, 2014, the Ordinance came before the Board of Supervisors for an initial vote. It passed 7-4.

41. On October 14, 2014, after the Board of Supervisors' initial vote approving the Ordinance, Mr. Conway contributed $25,000 more to Chiu's political action group, and the next day, Mr. Hoffman contributed $100,000 more to that group. The total contributions from Mr. Hoffman and Mr. Conway to Supervisor Chiu's political action group from May through October 2014 amounted to $674,000.

42. On October 21, 2014, the Board of Supervisors passed the final version of the Ordinance by a vote of 7-4.

43. HomeAway's input was neither solicited nor accepted by Supervisor Chiu's office, despite HomeAway's outreach to his office staff and its knowledge about short-term rental regulations adopted by other municipalities worldwide that it has gained as the oldest online marketplace in the short-term rental industry.

44. HomeAway also corresponded in writing and a phone conversation with the Office of the Treasurer and Tax Collector for the City and County of San Francisco explaining the value of HomeAway's business model and offering to have a dialogue with the City. The City requested that HomeAway supplement the phone conversation to explain its business model in writing, which HomeAway did via a letter. However, the City never responded to the letter and the dialogue ended.

45. On October 21, 2014, a group of San Francisco voters filed an ethics complaint alleging a conflict of interest between Supervisor Chiu and a political strategy firm working for Airbnb. The voters' complaint alleges that Nicole Derse, a consultant on Chiu's Assembly campaign and co-founder of 50+1 Strategies, organized a campaign to pressure members of the San Francisco Board of Supervisors to pass legislation

favorable to Airbnb. 50+1 Strategies is not registered as a lobbyist firm, nor are Derse's visits to Chiu logged as lobbyist activity, which the voters' complaint argues are clear ethical violations given that her firm dealt directly with Airbnb.

46. On October 27, 2014, San Francisco Mayor Ed Lee signed the Ordinance. By its terms, the Ordinance becomes effective on November 26, 2014, and becomes operative on February 1, 2015. Ordinance, § 4(a), (b).

## The Ordinance's Discriminatory Residency Restriction

47. The Ordinance amends the San Francisco Administrative Code to provide an exception to the previous prohibition on the short-term rental of residential units in San Francisco. As defined in the Ordinance, a "residential unit" is a building or any portion thereof that is "designed, built, rented, leased, let or hired out to be occupied." Ordinance, § 41A.4. A rental is considered "short-term" when it is offered for "Tourist or Transient Use," which means the use of a residential unit "for occupancy for less than a 30-day term . . . ." *Id.* The Ordinance does not regulate residential unit rentals for longer than 30 days -- such uses are not considered for "Tourist or Transient Use."

48. By its express terms, the Ordinance allows only permanent residents of San Francisco to rent out their property on a short-term basis. Ordinance, § 1(c)(2). To be considered a "permanent resident," an individual must state an intent to occupy the residential unit "for no less than 275 days out of the calendar year in which the Residential Unit is rented as a Short-Term Residential Rental . . . ." *Id.*, § 41A.5(g)(1)(A). If an individual meets this requirement, he or she may "offer a Residential Unit for rent for Tourist or Transient Use."

49. The Ordinance thus distinguishes between individuals who are San Francisco permanent residents (those who live in San Francisco for approximately 9 months of the year) and all other individuals in determining who may rent out residential units on a short-term basis. Based on this distinction, the Ordinance prohibits Listing Owners who are not California citizens and Listing Owners who are

11
COMPLAINT

California citizens but who are not permanent San Francisco residents (as defined in the Ordinance) from renting out their property on a short-term basis. This places such Listing Owners at a competitive disadvantage because they will be unable to participate in the San Francisco short-term rental market. In sum, on its face, the Ordinance favors San Francisco permanent residents and therefore discriminates against interstate commerce.

50. The Ordinance's permanent residency requirement substantially burdens interstate commerce by prohibiting short-term rentals of San Francisco residential units by non-San Francisco residents.

51. The San Francisco Planning Department's report on the Ordinance and the Board of Supervisors' legislative findings state certain objectives of the Ordinance's regulation of short-term residential rentals in San Francisco. But neither the Planning Department report nor the Board of Supervisors' findings demonstrates in the slightest why the discrimination against non-San Francisco residents (as defined under the Ordinance) is necessary to achieve the Ordinance's objectives.

52. The Planning Department report states that the purpose of regulating short-term rentals in San Francisco is "to preserve the City's housing stock, reduce negative effects on affordable housing, [] to protect the livability of residential neighborhoods" and to "protect the character of [San Francisco's] lowest intensity residential districts." Planning Department Resolution No. 19213, at pp. 3, 4 (Aug. 7, 2014). The report says absolutely nothing, however about the necessity of the Ordinance's discriminatory residency restriction.

53. The Board of Supervisors' findings state that "[t]he goal of regulation is to ensure compliance with all requirements of the Municipal Code" and to ensure that residential units rented on a short-term basis "remain truly residential in use." Ordinance, § 1(c)(1), (2). However, these findings, too, say absolutely nothing about the necessity for the Ordinance's discriminatory residency restriction.

54. In sum, the Defendants have provided no evidence at all that limiting short-term rentals to San Francisco residents will preserve the City's residential rental housing stock and make affordable housing more available in the City.

55. Under the Commerce Clause, facially discriminatory laws are presumptively invalid. They will be upheld only if the body that adopts the law proves that the discrimination is necessary to achieve an important local purpose. The City has failed to make that showing here with respect to the Ordinance's discriminatory residency restriction, and thus it is unconstitutional.

56. In any event, the Ordinance's residency restriction imposes substantial burdens on interstate commerce in excess of any asserted local benefit.

## The Ordinance's Rigid Hosting Platform Rules

57. The Ordinance also amends the San Francisco Administrative Code to regulate Hosting Platforms. The Ordinance states that a Hosting Platform service "is usually, though not necessarily, provided through an online platform and generally allows a Listing Owner to advertise the Residential Unit through a website provided by the Hosting Platform and provides a means for potential tourist or transient users to arrange Tourist or Transient Use and payment, whether the tourist or transient pays rent directly to the Listing Owner or to the Hosting Platform." Ordinance, § 41.A.4.

58. Under the Ordinance, however any Hosting Platform doing business in San Francisco must now collect and remit "all required Transient Occupancy Taxes" and "maintain a record demonstrating that the taxes have been remitted to the Tax Collector . . . ." *Id.*, §41A.5(g)(4). In effect, the Ordinance requires the Hosting Platform to be an Agency business model.

59. HomeAway is not an Agency business model. It does not conduct its operations in a manner that enables it to collect and hold rent from Travelers, calculate and collect Transient Occupancy Taxes from Travelers, nor definitively know whether a transaction has occurred between the Traveler and Listing Owner that would give rise to

13
COMPLAINT

Transient Occupancy Taxes.  In short, HomeAway is not an agent of the Listing Owner. Rather, HomeAway supports the relationship between the Listing Owner who provides the service (*i.e.*, the accommodation) and the user of the service (*i.e.*, the Traveler), which has been standard practice in the vacation rental industry for over 70 years. Travelers arrange their stay directly with Listing Owners and HomeAway charges the Listing Owner only for the advertising services it provides.  HomeAway's primary revenue comes from Listing Owner advertisements on its websites.  Listing Owners maintain their own books and customer lists and are otherwise responsible for the rental of their properties.

60.   To comply with the rigid Hosting Platform rules, HomeAway would need to stop being an advertising venue, and instead adopt the Agency model, effectively competing with its Listing Owners/advertisers, and to collect taxes from Listing Owners that the Listing Owners owe directly to the City under the Ordinance, and to do so in only one municipality out of the more than 19,000 locations where Listing Owners offer their properties for rent via HomeAway.  None of HomeAway's websites is dedicated exclusively to San Francisco rentals.  Rather, HomeAway uses the same websites throughout the country to attract Travelers to all markets.  Further, the Hosting Platform rules transfer enforcement, and the cost of enforcement, of the Ordinance from the City to HomeAway even though a transaction that gives rise to such enforcement is between the Listing Owner and the Traveler, and HomeAway at no time is a party to that transaction.

61.   HomeAway is a large company that has developed a sizeable customer base across the United States and around the world that uses its websites to search for short-term rentals.  If there were no requirement that a Hosting Platform doing business in San Francisco collect and remit the Transient Occupancy Taxes, HomeAway would be able to list permanent San Francisco residents' short-term rentals on its website and thus direct a steady flow of interstate commerce to San Francisco.  The exclusion of

HomeAway from San Francisco by dint of the Hosting Platform rules that were specifically designed to match the business model of a company based on San Francisco thus discriminates against interstate commerce.

62. The Ordinance is also likely to prohibit other significant Hosting Platforms that have business models similar to HomeAway's from engaging in advertising short-term rentals in San Francisco. Indeed, as written, the Ordinance prohibits any advertising venue from advertising a short-term rental without collecting and remitting the Transient Occupancy taxes. Under the Ordinance, a local newspaper selling classified ads for short-term rentals would be required to collect Transient Occupancy taxes and remit them to the City on behalf of its advertiser.

63. By driving out major Hosting Platforms from participation in San Francisco's short-term rental market, the Ordinance has an anti-competitive effect that further substantially burdens interstate commerce. Without the participation of HomeAway and businesses with similar models in the San Francisco short-term rental market, interstate consumers of short-term rentals in San Francisco will have fewer choices of Hosting Platforms to utilize, and those businesses that use the Agency model thus can charge any fee they like without fear of competition.

64. The Hosting Platform rules memorialize into law the business model of Airbnb, a competitor of HomeAway that is based in San Francisco. The Hosting Platform rules thus have the purpose and effect of legalizing the business model of a large, local company, while banning the business model of HomeAway and other non-San Francisco-based Hosting Platforms. This naked economic protectionism essentially bestows on Airbnb an effective monopoly over the short-term rental market in San Francisco. Under the Commerce Clause, protecting local businesses, such as Airbnb, from competition arising from non-local business, such as such as HomeAway, is not a legitimate purpose that justifies discrimination.

15
COMPLAINT

65.     The Board of Supervisors' findings state that the purpose of regulating Hosting Platforms is to "ensure good business standards and practices."  Ordinance, §1(c)(3).  Those findings do not, however, support the supposition of the Ordinance's Hosting Platform rules that the business model of HomeAway and other non-San Francisco-based Hosting Platforms is an inferior business standard or practice and thus must be barred from the City.   The City thus has failed to explain why the discriminatory Hosting Platform rules are necessary to achieve the Ordinance's stated objective for the regulation of Hosting Platforms, thus rendering the rules unconstitutional under the Commerce Clause.  In fact, the Hosting Platform rules are actually contrary to that objective because they likely will lead to standards and practices under which short-term rental activity goes unreported by the Hosting Platform.

66.     In any event, any asserted benefits of the Ordinance's Hosting Platform rules are outweighed by the substantial burdens that the rules impose on interstate commerce.   The Hosting Platform rules thus violate the Commerce Clause for this reason as well.

**FIRST CLAIM FOR RELIEF**

**DORMANT COMMERCE CLAUSE**

**(Discrimination Against Interstate Commerce)**

67.     HomeAway realleges and incorporates by reference paragraphs 1 through 66 of this Complaint into this First Claim for Relief as if set forth here.

68.     San Francisco Ordinance No. 140381 discriminates against interstate commerce in violation of the Commerce Clause, art. I, § 8, cl. 3 of the United States Constitution, because it distinguishes between Listing Owners of residential units who are San Francisco permanent residents and Listing Owners who are not San Francisco permanent residents, and allows only San Francisco permanent residents to rent out

residential units on a short-term basis. The City has failed to show that this facially discriminatory residency restriction is necessary to achieve an important local purpose.

69. San Francisco Ordinance No. 140381 discriminates against interstate commerce in violation of the Commerce Clause for the additional reason that the Ordinance's Hosting Platform rules have the purpose and effect of favoring San Francisco-based Airbnb and disfavoring HomeAway and other non-San Francisco-based Hosting Platforms. The City has failed to show that the discrimination wrought by the Hosting Platform rules is necessary to achieve an important local purpose.

70. HomeAway is therefore entitled to a declaratory judgment that the Ordinance's discriminatory residency restriction and Hosting Platform rules are unconstitutional under the Commerce Clause.

71. HomeAway will suffer irreparable harm if Defendants are permitted to enforce the Ordinance. If the unconstitutional discrimination were not part of the Ordinance, HomeAway would be able to advertise residential units of Listing Owners who are not San Francisco permanent residents and to San Francisco permanent residents as well.

72. HomeAway is thus entitled to an injunction (preliminary and permanent) prohibiting Defendants from enforcing the Ordinance's discriminatory residency restriction.

## SECOND CLAIM FOR RELIEF
## DORMANT COMMERCE CLAUSE
**(Excessive Burden on Interstate Commerce)**

73. HomeAway realleges and incorporates by reference paragraphs 1 through 72 of this Complaint into this Second Claim for Relief as if set forth here.

74. The discriminatory residency restriction and the Hosting Platform rules in San Francisco Ordinance No. 140381 impose a substantial burden on interstate

commerce in excess of their putative benefits to the City, in violation of the Commerce Clause of the United States Constitution, art. I, § 8, cl. 3.

75. HomeAway is therefore entitled to a declaratory judgment that the Ordinance's discriminatory residency restriction and Hosting Platform rules are unconstitutional under the Commerce Clause.

76. HomeAway will suffer irreparable harm if Defendants are permitted to enforce the Ordinance because the discriminatory residency restriction and the Hosting Platform Rules will effectively prohibit HomeAway from doing business in San Francisco.

77. HomeAway is thus entitled to an injunction (preliminary and permanent) prohibiting Defendants from enforcing the residency restriction and Hosting Platform rules.

## PRAYER FOR RELIEF

HomeAway respectfully requests a judgment against Defendants on each and every Claim for Relief as follows:

(1) On an expedited basis, pursuant to Fed. R. Civ. P. 57, declaring that Ordinance No. 140381 violates the Commerce Clause of the United States Constitution, art. I, § 8, cl. 3, and is therefore unconstitutional to the extent that it (i) facially discriminates against those who are not permanent residents of San Francisco, and prevents anyone who is not a permanent resident of San Francisco from renting out a residential unit on a short-term basis; (ii) has the purpose and effect of discriminating against non-San-Francisco based Hosting Platforms; and (iii) imposes substantial burdens on interstate commerce in excess of asserted local benefits by precluding anyone who is not a permanent resident of San Francisco from renting out a residential unit on a short-term basis and preventing HomeAway and other non-San Francisco-based Hosting Platforms from conducting business in San Francisco;

(2) Enjoining Defendants (preliminarily and permanently) from enforcing the discriminatory residency restriction and Hosting Platform rules in Ordinance No. 140381;

(3) Awarding HomeAway its costs and expenses, including reasonable attorneys' fees pursuant to 42 U.S.C. § 1988 and any other applicable laws; and

(4) Granting such other relief as this Court may deem just and proper.

Dated:  November 3, 2014                         AKIN GUMP STRAUSS HAUER & FELD LLP

By /s/ Rex S. Heinke
　　　　　　　　Rex S. Heinke

Attorneys for HomeAway, Inc. and HomeAway.com, Inc.